# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KAREN RUPERT, | ) | CASE NO.  1:09CV2763 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| MACY'S, INC., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of Defendant Macy's Retail Holdings, Inc. (Defendant or Macy's) to dismiss the action, or alternatively, stay the action pending arbitration (Doc. No. 8), and the motion of Plaintiff Karen Rupert (Plaintiff or Rupert) to stay ruling on the motion to compel arbitration. (Doc. No. 10.) The parties have fully briefed the issues presented in these motions, and they are ripe for decision.[1] For the reasons that follow, Defendant's motion to dismiss/compel arbitration is **GRANTED** and Plaintiff's motion to stay ruling on the motion to compel is **DENIED**.

**Background**

Plaintiff was employed by Defendant, and/or its predecessor in interest,

---

[1] Several other motions are pending: (1) Defendant's motion to stay the action pending determination of the motion to compel arbitration (Doc. No. 9); (2) Defendant's motion to strike Plaintiff's Amended Complaint (Doc. No. 18); and (3) Plaintiff's motion for leave to file an Amended Complaint. (Doc. No. 21.) Because the Court is dismissing this action, these remaining motions are **DENIED** as moot.

between approximately 1991 and 2009. (Doc. No. 17, Am. Compl. at ¶¶ 6, 15.)[2] She began her employment with the May Department Stores Company (May Company) as a part-time Sales Associate, and was subsequently promoted to Area Service Manger, and then to Merchandise Manager. (*Id*. at ¶ 8.)

In 2003, Macy's developed a new internal dispute resolution program called "Solutions InSTORE" ("SIS" or "the Program"). The Program consists of a four step process for resolving workplace disputes and employee concerns. (Doc. No. 8, Ex. 1, Declaration of Robert Noeth, at ¶ 4, Ex. 1-A, Copy of SIS Plan Document.) The process begins informally, with each subsequent step becoming increasingly formal. The fourth and final step of the Program provides for binding arbitration administered by a professional from the American Arbitration Association (AAA). (Noeth Decl. at ¶ 9, SIS Plan Document at 5-17.) All employees were automatically covered by all steps of the Program, although employees were given the option of opting out of the fourth step by completing a one-page form and mailing it to the office of Solutions InSTORE, the department created to administer the Program. (*Id*. at ¶ 9.)

Macy's introduced the Program to its employees in the fall of 2003, and the program became effective in January 2004 for all then-current Macy's employees. (Noeth Decl. at ¶ 13.) On August 30, 2005, the May Department Stores Company merged with Macy's. (*Id*. at ¶ 14.) On September 20, 2006, Macy's introduced the Program to all

---

[2] On March 1, 2010, after Defendant had filed its answer, Plaintiff filed her Amended Complaint. (Doc. No. 17.) The sole purpose of the Amended Complaint appears to have been to add a claim for violation of the Ohio Constitution, and the factual allegations appear to be unchanged from the original Complaint. (*See* Am. Compl. at ¶¶ 40-45.) While the Court believes that the Amended Complaint was filed in violation of Fed. R. Civ. P. 15, the Court shall also refer to the Amended Complaint for its discussion of Plaintiff's allegations.

former May Company employees through a series of informational sessions at each store location. These sessions included the presentation of a video and the distribution of literature, both designed to explain the mechanics of the Program. Plaintiff attended such a session on August 24, 2006. (*Id*. at ¶ 21, Ex. 1-E and F, Roster and Attendance Sheet.)

Former May Company employees also received a packet of information entitled "Welcome to Solutions InSTORE," which was mailed to their homes. (*Id*. at ¶¶ 22, 24, Ex. 1-G, 2006 Mailing.) The "welcome" packet specifically notified employees of their right to opt out of the arbitration provision in Step 4, and included both instructions on how to elect to opt out and the one-page form that any employee wishing to be excluded from the arbitration provision needed to return ("October 2006 Election Form"). The welcome packet also included a pre-addressed, postage prepaid return envelope for the October 2006 Election Form. The form, itself, provided:

> Complete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS INSTORE. *In this case, your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2006.* We will send you confirmation that your form was received.

(*Id*., Ex. 1-H) (emphasis in original). Plaintiff does not dispute that she received a copy of the welcome packet and the October 2006 Election Form, and further does not dispute that she did not return the Election Form in 2006.

Employees wishing to opt out of the arbitration provision in the Program were afforded a second opportunity to do so in the fall of 2007. At that time, a second mailing was sent to all employees. The mailing included a newsletter about the Program and a 2007 Election Form, as well as a brochure, which explained that employees could

elect to opt out of Step 4 of the Program by returning the 2007 Election Form by November 15, 2007. The 2007 Election Form contained the same instructions for opting out of Step 4 as the 2006 Form. Plaintiff did not return the 2007 Election Form. (Noeth Decl. at § 43, Ex. 1-O.)

Rupert's employment with Macy's was terminated on January 6, 2009. (Am. Compl. at ¶ 15.) The details surrounding her discharge are not relevant to the pending motions. What is relevant is that on October 22, 2009, Plaintiff filed a complaint against Defendant in the Summit County Court of Common Pleas. The action was subsequently removed to this Court. (Doc. No. 1, Notice of Removal.) In her Amended Complaint, Plaintiff maintains that she was discharged for exercising her rights under the Family Medical Leave Act (FMLA), in violation of 29 U.S.C. §§ 2615(a), (b). She also claims that she was the victim of age and disability discrimination, in violation of OHIO REV. CODE § 4122, and alleges that her discharge violated Ohio's public policy against wrongful discharge and was secured in violation of the Ohio Constitution.

By its motion to compel, Defendant seeks an order dismissing the case, or, in the alternative, compelling arbitration of Plaintiff's claims and staying the action pending arbitration. By her motion to stay, Plaintiff requests additional time to conduct limited discovery. The Court begins with Plaintiff's motion to stay.

**Plaintiff's Rule 56(f) Motion**

Federal Rule of Civil Procedure 56(f) permits a court to allow discovery

prior to ruling on a motion for summary judgment.[3] A party "has no absolute right to additional time for discovery[.]" *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 409 (6th Cir. 1998). "A party invoking [Rule 56(f)'s] protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989). "Where [. . .] a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified." *Id.* (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). The decision as to whether to grant a Rule 56(f) motion is left to the court's discretion. *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998) (citing *Bush v. Ranch*, 38 F.3d 842, 849 (6th Cir. 1994)).

In her Rule 56(f) motion, Rupert claims that "significant documents are missing and are unavailable to the Plaintiff. Specifically, Plaintiff believes that the Defendant's employee handbook contains information relevant to the issues of mutual assent and exchange of consideration." (Doc. No. 10 at 2.) Plaintiff also indicates that she would "like an opportunity to depose Mr. Noeth and Mrs. Ritche regarding the allegations set forth in their affidavit and specifically question them on issues regarding mutual assent and consideration." (*Id.*) In its response to Plaintiff's motion, Defendant produced its employee handbook. (*See* Doc. No. 13 at 2, Ex 1, Employee Handbook.)

---

[3] Defendant brings its motion to compel under Fed. R. Civ. P. 12(b)(1). Because, as will be discussed below, the standard of review is more akin to a summary judgment motion, Plaintiff's Rule 56(f) motion is properly before the Court.

Plaintiff's request to depose certain Macy's employees overlooks the purely legal nature of Defendant's motion to compel. As will be discussed in detail below, the determination as to whether there exists a binding arbitration agreement between the parties is a matter of contract interpretation. *Seaboard C.L.R. Co. v. Trailer Train Co*., 690 F.2d 1343, 1348 (11th Cir. 1982). The Court now has before it the arbitration agreement, contained in the SIS Plan Document, as well as Macy's employee handbook. From these documents, the Court can determine whether the parties are bound by an agreement to arbitrate, without resorting to extrinsic evidence. That these documents are sufficient to address Defendant's motion is evidenced by the fact that Plaintiff has subsequently filed an opposition to the motion, referencing both the SIS Plan Document and the employee handbook, and identifying the contract principles that she believes render the arbitration agreement unenforceable. (*See* Doc. No. 15.) Plaintiff has failed to demonstrate how the views of Macy's employees regarding mutual assent or consideration would assist the Court in resolving Defendant's motion. Plaintiff thus has failed to carry her burden of showing that information sought by her Rule 56(f) motion is necessary to oppose Defendant's motion to compel. Accordingly, the motion to stay is **DENIED**, and the Court moves on to Defendant's motion to compel.

**Standard for Motion to Compel Arbitration**

The standard for ruling on Macy's motion is dictated by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*., which provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" for an order compelling arbitration. 9 U.S.C. § 4. The FAA then

provides for a stay of the proceedings in federal court, "until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3.

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment." *Raasch v. NCR Corp*., 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003). *See Anderson v. Delta Funding Corp*., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004) ("Granting a motion to compel arbitration effects a 'summary disposition of the [factual] issue of the existence of an arbitration agreement.'") (quoting *Bertram v. Ben. Consumer Disc. Co*., 286 F. Supp. 2d 453, 456 (M.D. Pa. 2003)). "The Court should therefore consider facts in the light most favorable to the Plaintiff when determining whether a valid and enforceable arbitration agreement exists and exercise its wide discretion to look beyond the complaint at pleadings and documents submitted by either party." *Id*. at 558.

**Defendant's Motion to Compel Arbitration**

"Petitions to compel arbitration, § 4 states, may be brought before 'any United States district court which, save for such agreement, would have jurisdiction under title 28 [...] of the subject matter of a suit arising out of the controversy between the parties.'" *Vaden v. Discover Bank*, _ U.S. _, 129 S. Ct. 1262, 1271 (2009) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 3 n.3 (1984)). Federal law demands that courts "rigorously enforce arbitration agreements." *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio 2009) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1983)).

The FAA manifests "a liberal federal policy favoring arbitration agreements."[4] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) *See* 9 U.S.C. §§ 1-16. *See also Shearson/American Express,* 482 U.S. at 226; *Stachurski,* 642 F. Supp. 2d at 764. "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 & 4). In cases where all claims are referred to arbitration, however, the litigation may be dismissed rather than merely stayed. *See Hensel v. Cargill, Inc.*, 1999 U.S. App. LEXIS 26600, at *10 (6th Cir. Oct. 19, 1999); *see also Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal is proper where all claims must be submitted to arbitration); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude dismissal).

The Sixth Circuit applies a four-pronged test to determine whether to grant motions to dismiss or stay the proceedings and compel arbitration:

(1) The Court must determine whether the parties agreed to arbitrate;
(2) The Court must determine the scope of that agreement;
(3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and
(4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

---

[4] Ohio policy also strongly favors arbitration. *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 66 (2009). *See* OHIO REV. CODE § 2711.01, *et seq.*

8

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In applying this test, "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id*.

> 1)      **Scope of the Agreement**

The Court begins by determining whether the scope of the arbitration agreement is broad enough to encompass the claims asserted by Plaintiff. "The question of whether a contract's arbitration claim requires arbitration of a given dispute remains a matter of contract interpretation." *Seaboard C.L.R. Co*., 690 F.2d at 1348. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-583 (1990). *See AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986).

Article 2 of the SIS Plan Document defines the scope of the arbitration agreement, and provides that:

> Except as otherwise limited,[5] all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or *cessation of employment*, whether arising under Federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration.

(Noeth Decl., Ex.1-A at 6) (emphasis added). The agreement goes on to explain that "Employment-Related Claims" include, but are not limited to:

> claims arising under [...] *the Family and Medical Leave Act (FMLA)* [...] *state discrimination statutes*, state statutes, and/or common law regulating

---

[5] These limitations, including actions brought under an employee pension or benefit plan or those under the National Labor Relations Act, are not relevant to the present case. (Noeth Decl. at ¶ 11.)

employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, *wrongful discharge*, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

(*Id.*) (emphasis added). Given this clear language, there can be no doubt that all of Plaintiff's federal and state law "employment-related claims" are covered by the arbitration agreement. The question then becomes whether the agreement is valid and enforceable.

2)  **Validity of the Agreement**

"In determining whether the parties formed a valid arbitration agreement, 'state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally, although the FAA preempts 'state law applicable to only arbitration provisions.'" *Price v. Taylor*, 575 F. Supp. 2d 845, 851 (N.D. Ohio 2008) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 899 (6th Cir. 2002) (internal citation omitted)). Plaintiff claims that, under Ohio law, the arbitration agreement is not valid because it lacks mutuality and consideration.

*Mutuality*

Plaintiff argues that neither she nor Defendant agreed to be bound by the terms of the Program. "Under Ohio law, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Dantz v. Am. Apple Group, LLC*, 123 Fed. App'x 702, 707 (6th Cir. 2005) (quoting *Harmon v. Philip Morris, Inc.*, 120 Ohio App. 3d 187 (Ohio Ct. App. 8th Dist. 1997) (internal citation omitted)). Thus, mutual assent is required in Ohio to form a valid contract. *Id. See Trumbull v. Century Mktg. Corp.,* 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) ("Without mutuality of

obligation, a contract cannot be enforced.") Mutual assent "ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties." *Harmon*, 120 Ohio App. 3d at 190 (quoting Restatement (Second) of Contracts, § 22.)

According to Rupert, her continued employment with Macy's was not conditioned upon her acceptance of the arbitration agreement. Plaintiff cites the voluntary nature of the arbitration agreement, specifically drawing the Court's attention to Defendant's motion to compel, wherein Defendant states that "[e]mployment with Macy's is not conditioned on acceptance of the arbitration procedure." (Mot. to Compel at 2.)  She also points to the arbitration agreement, itself, which provides the employee with the opportunity to opt out of Step 4.

Plaintiff is confusing the opportunity to opt out of the arbitration process with participation in the Program, itself. The SIS Plan Document provides, in relevant part:

> All Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company. That means that all Associates agree, *as a condition of employment*, to arbitrate any and all disputes, including statutory or other claims, not resolved at Step 3. However, arbitration is a voluntary condition of employment. Associates are given the option of excluding themselves from Step 4 arbitration within the prescribed time frame. [...] *You are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration.* Whether you choose to remain covered by arbitration or to exclude yourself has no negative impact on your employment.

(Noeth Decl., Ex. A at 5) (emphasis added.) While acceptance of Step 4 arbitration is not mandatory, employees are bound to arbitrate all grievances unless they opt out of Step 4

within the specified time period. Plaintiff did not exercise her right to opt out, and is, therefore, bound by Step 4 arbitration.

Plaintiff also argues, however, that a disclaimer in Macy's employee handbook destroys any mutuality. The disclaimer appears in page 5 of the handbook indicating that "[t]his guide is provided and is not intended to be nor should it be viewed as a contract between Macy's and you." (Doc. No. 13, Ex. 1, Handbook at 5.) An employee handbook can constitute a written contract taking employment outside of the at-will doctrine generally applied to employment relationships in Ohio. *Tohline v. Central Trust Co. N.A.*, 48 Ohio App. 3d 280, 282 (Ohio Ct. App. 1st Dist. 1988). However, "a disclaimer in an employee handbook stating that employment is at will precludes an employment contract." *Soletro v. Nat'l Fed'n of Indep. Bus.,* 130 F. Supp. 2d  906, 916 n. 14 (N.D. Ohio 2001). *See Morr v. Kamco Indus.*, 548 F. Supp. 2d 472, 483 (N.D. Ohio 2008); *Rigby v. Fallsway Equip. Co.*, 150 Ohio App. 3d 155 (Ohio Ct. App. 9th Dist. 2002) (disclaimer language in an employee handbook together with an acknowledgment form precludes the employee handbook from becoming an employment contract).

However, Defendant does not rely on the employee handbook to compel arbitration. Rather, it relies on the separate arbitration agreement contained in the SIS Plan Document. Interestingly, a similar situation was presented in a case relied upon by Plaintiff. In *Cunningham-Malhoit v. Salomon Smith Barney*, a disclaimer appeared in the employee handbook indicating that the handbook did not constitute a guarantee of employment for any specified time. Because of this disclaimer, the court found that the employer could not rely on the handbook to compel arbitration of the employee's

12

contract and discrimination claims. 2003 Ohio App. LEXIS 2515, at *7-*8 (Ohio Ct. App. 6th Dist. May 30, 2003). Notwithstanding this disclaimer, the court ultimately concluded that the employer could compel arbitration because of the existence of a separate arbitration agreement to which the employee agreed to be bound. *Id*. at *8.

The same result is required here. While the disclaimer in the employee handbook, which incidentally only makes a passing reference to arbitration,[6] cannot serve as the basis for an order compelling arbitration, the SIS Plan Document can provide such a basis.[7] The Plan Document is a stand-alone agreement that binds all employees, who like Plaintiff chose not to opt out, to the binding arbitration of their disputes. *See, e.g., Dantz*, 123 Fed. App'x at 708 (the employer made an offer for an unilateral contract involving mandatory and binding arbitration which the employee accepted by his continued employment).

According to Plaintiff, however, she need not resort to the employee handbook to demonstrate Defendant's unwillingness to be bound by the arbitration agreement. Instead, she underscores the fact that Defendant specifically reserved the right to unilaterally cancel or modify the terms of the arbitration agreement. In *Morrison v. Circuit City Stores*, the Sixth Circuit upheld an arbitration agreement that afforded the employer the right to amend or terminate an arbitration agreement at a specified time

---

[6] The employee handbook briefly summarizes the dispute resolution program set forth in the SIS Plan Document, and identifies, in a very few words, each of the four steps. It does not lay out the rights and duties under the Program. Indeed, Step 4 is only described as "Arbitration." (Employee Handbook at 23.) Of course, even if there was a perceived inconsistency between the binding nature of the dispute resolution process set forth in the SIS Plan Document and the disclaimer in the employee handbook, all doubts would have to be resolved in favor of arbitration. *See Price*, 575 F. Supp. 2d at 851 (citing *Stout*, 228 F.3d at 714).

[7] Plaintiff suggests that the disclaimer in the employee handbook applies to the Program, as well, but there is nothing in the handbook that supports this belief.

13

each year upon 30 days notice to the employees. 317 F.3d 646, 667 (6th Cir. 2003).

Relying on the Second Restatement of Contracts, the court found the 30 days notice to be

sufficient mutual obligation and consideration to support the agreement because it

promised, at a minimum, that the arbitration agreement would be enforced for a

minimum of 30 days. *Id.* at 668.

Similarly, Article 21 of Step 4 of the SIS Plan Document provides that:

> The Company may alter these Solutions InSTORE Early Dispute
> Resolution Rules and Procedures or cancel the program in its entirety
> upon giving thirty (30) days written notice to Associates. If such notice is
> not provided to an Associate, the Solutions InSTORE Early Dispute
> Resolutions and Procedures that covered the Associate prior to the
> modification or cancellation shall govern.

(SIS Plan Document, Step 4, Article 21 at 16.)  Because Defendant promises to be bound

by the arbitration agreement for a minimum of 30 days, the Court finds sufficient mutual

obligation to support the agreement. *Contrast Floss v. Ryan's Family Steak Houses, Inc*.,

211 F.3d 306, 315-16 (6th Cir. 2000) (no mutuality where the employer "reserved the

right to alter the applicable rules and procedures without any obligation to notify, much

less receive consent from" employees); *Harmon*, 120 Ohio App. 3d at 191 (arbitration

agreement requiring employees to submit claims to arbitration but imposing no reciprocal

obligation on the employer, and giving employer unfettered right to amend or terminate

the arbitration program at any time failed for lack of mutuality).

### *Consideration*

Even if mutuality did not exist, an arbitration clause would still be

enforceable under Ohio law so long as there was consideration to support it. *Price*, 575 F.

Supp. 2d at 853 (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396-97 (6th Cir.

2003)); *Joseph v. M.B.N.A. Am. Bank, N.A.*, 148 Ohio App. 3d 660, 664 (Ohio Ct. App. 8th Dist. 2002). "Under Ohio law, 'to constitute consideration, a performance or a return promise must be bargained for.'" *Dantz*, 123 Fed. App'x at 708. "A promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisor in exchange for that promise." *Harmon*, 120 Ohio App. 3d at 190 (quoting Restatement (Second) of Contracts, § 71.) *See Dantz*, 123 Fed. App'x at 708.

As discussed above, participation in the Program—either with or without the decision to opt out of Step 4 arbitration—was a condition of Plaintiff's employment. Plaintiff's continued employment, therefore, constituted consideration to support the arbitration agreement. *See Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 864 (N.D. Ohio 2003) ("[W]here an employer informs its employees that from this point forward, certain disputes must be directed to arbitration, while the employees are not obligated to continue in their employment, as long as they do, they are obligated to comply with the terms set by the employer […]. The consideration is given by the employer when the employee accepts the offer of continued employment.")

In any event, continued employment is not the only consideration that supports the arbitration agreement. In addition to the aforementioned agreement by Defendant to be bound, at least for 30 days, by the same arbitration agreement, Defendant also agrees to assume most of the costs associated with the arbitration, and further agrees to reimburse an employee for her attorney's fees up to $2,500. (Noeth Decl. at ¶ 12, Ex. 1-A at 9, 12-15.) Defendant also agrees to proceed without counsel at arbitration if the employee elects to forego representation. (*Id.*, Ex. 1-A at 9.) The Court finds that these additional promises constitute further consideration to support the agreement.

15

***Stout* Test Conclusion**

Ultimately, the Court finds that all of the factors of the *Stout* test are satisfied. There exists a valid and enforceable agreement between the parties, and all of the claims asserted by Plaintiff in her Complaint (as well as her Amended Complaint) fall within the scope of the agreement. Further, because all of the claims are subject to arbitration, a dismissal, rather than a stay, is warranted. *See Hensel*, 1999 U.S. App. LEXIS 26600, at *10; *Alford*, 975 F.2d at 1164. Finally, as for Plaintiff's only federal claims, those brought under the FMLA, there is no indication that Congress intended to exclude such claims from arbitration. *See Brinkerhoff v. Zachry Construction Corp.*, 2005 U.S. Dist. LEXIS 33333, at *15-*16 (S.D. Ohio July 14, 2005) ("Nothing in the language of the FMLA suggests that Congress wished to exempt disputes arising under it from the FAA.")

**Conclusion**

Therefore, for the foregoing reasons, Defendant's motion to dismiss and compel arbitration is **GRANTED**, and Plaintiff's motion to stay is **DENIED**. Plaintiff is **ORDERED** to enter into arbitration to resolve any disputes relating to her discharge. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: June 2, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

16